**Kimberly STEPHENS and the Cincinnati Insurance Companies, Appellants–Defendants,**

**v.**

**Derek W. IRVIN, Missy Hodge, and Sentry Insurance, Appellees–Plaintiffs.**

No. 12A02–9910–CV–684.

Court of Appeals of Indiana.

June 30, 2000.

## OPINION

BAILEY, Judge

### Case Summary

Appellants–Defendants Kimberly Stephens ("Stephens") and Cincinnati Insurance Companies ("CIC") bring this consolidated interlocutory appeal challenging the trial court's decision to grant Appellees–Plaintiffs Derek Irvin's ("Irvin"), Missy Hodge's ("Hodge") and Sentry Insurance's ("Sentry"), collectively referred to herein as "Plaintiffs," respective Motion[s] to Correct Error, thereby permitting Plaintiffs to add Stephens as a defendant to the underlying causes. We affirm.

### Issues

We restate the dispositive issues raised on appeal as follows:

I.  Whether the trial court erred in considering certain affidavits submitted with Plaintiffs' respective motions captioned "Motion[s] to Correct Error"; and,

II. Whether the trial court abused its discretion by granting Plaintiffs' motions for leave to amend their complaints by adding Stephens as a defendant after the expiration of the two-year statute of limitations.[1]

### Facts[2]

The facts most favorable to the judgment indicate that on November 19, 1994, Irvin and his passenger, Hodge, were driving in Frankfort, Indiana, when their automobile was struck by another vehicle owned by Patricia Brashear ("Brashear") and insured by CIC. The driver of the Brashear vehicle fled the scene of the accident before the police arrived. The pas-

Richard R. Skiles, Skiles & Cook, Arlene Rochlin, The Law Offices of the Cincinnati Ins. Co., Indianapolis, Indiana, Attorneys for Appellants.

William N. Ivers, Richard P. Winegardner, Kelli Keller, Stewart & Irwin, J. David Hollingsworth, Hollingsworth & Meek, Indianapolis, Indiana, Attorneys for Appellees.

1.  In light of our resolution of this issue, we need not address Stephens's and CIC's additional contention that the doctrine of equitable estoppel is inapplicable to the case at bar.

2.  The two underlying state cases have been consolidated solely for purposes of this interlocutory appeal, as both cases involve the same automobile accident, the same defendant, related plaintiffs, and the same issues.

The record for each underlying cause was submitted to this Court in a separate, marked volume with a Clerk's certificate for each case. Hereinafter, we shall refer to the record pertaining to the cause involving plaintiffs Irvin and Hodge as "Irvin/Hodge R." Likewise, we will refer to the record pertaining to the separate cause involving plaintiff Sentry Insurance as "Sentry R."

senger in the Brashear vehicle, Ralph Bailey ("Bailey"), told the police that the car belonged to him[3] and that the driver of the vehicle had his permission to drive the car, but that he did not know the driver's name as he had only met her earlier that evening. Frankfort Police Officer Boyd Martin ("Officer Martin") arrived on the scene, investigated the accident, and prepared an Indiana Officer's Standard Crash Report ("Accident Report"). The Accident Report listed the driver of the Brashear vehicle as "Unknown".

During his investigation of the accident, Officer Martin became aware of some information that led him to suspect that Stephens had been the operator of the Brashear vehicle. Officer Martin therefore completed a "LAW Incident Table" on the day of the accident and included Stephens's name as the suspected driver of the Brashear vehicle. The LAW Incident Table was not attached to or mentioned in the Accident Report, but was made available to the public within twenty-four hours of the accident.

### Procedural History

On January 18, 1995, Irvin and Hodge filed a complaint seeking damages arising out of the collision and naming Bailey and "Jane Doe" as defendants in their negligence action. In July of 1995, Irvin and Hodge deposed Bailey, who testified that he was not sure, but he thought the driver's name was Loretta Huff ("Huff") and that she was from Lafayette, Indiana. After deposing Bailey, Irvin and Hodge filed a Motion to Amend Complaint on February 5, 1996, in order to substitute "Loretta Huff" for "Jane Doe" as the driver of the Brashear car. Plaintiffs were unable to

ascertain the location of Huff's residence, so service was made by publication.

On November 12, 1996, Sentry filed its complaint naming Huff as the driver in its insurance subrogation claim to recover property damage payments and medical payments issued to its insureds, Irvin and Hodge. On June 13, 1997, Sentry filed its motion for default judgment against Huff, and on June 17, 1997, default judgment was entered against Huff in the sum of $10,482.84.[4] On June 18, 1997, CIC filed its Motion for Leave to Intervene and Motion for Stay of Proceedings or to Reconsider, which was granted on June 20, 1997. On December 11, 1998, Sentry filed its Motion to Lift Stay regarding the default judgment against Huff, which was granted on January 5, 1999. However, the stay was reinstated on January 21, 1999, after Sentry withdrew its motion.[5]

A third cause of action relating to this automobile collision was initiated by CIC when it filed a complaint for declaratory judgment in federal district court to determine its duty of coverage, if any, owed to Huff in the state cases. This federal declaratory judgment action was scheduled to be tried on March 18, 1999.[6] While preparing for trial, CIC's counsel noticed that the Accident Report prepared by Officer Martin did not contain the usual identifying number. Counsel therefore called the Frankfort Police Department on March 3, 1999, and learned of the existence of the Law Incident Table and its contents, which reflected Officer Martin's suspicion that Stephens had been the driver of the Brashear vehicle.

Shortly thereafter, Stephens, who was contacted by one of CIC's attorneys, came

---

3. We note that the evidence shows Bailey was Brashear's son and that Bailey had permission to use Brashear's vehicle.

4. Sentry initially named CIC as a party-defendant as well, but then voluntarily dismissed CIC on December 16, 1996. CIC subsequently sought and obtained leave to intervene in order to move to set aside the default judgment against Huff.

5. The trial court's order reinstating the stay of proceedings was not contained in the record. However, the Chronological Case Summary contained in the Sentry record confirms this fact. (Sentry R. 13.)

6. The federal district court declaratory judgment action is currently stayed, pending the outcome of the state court cases.

forward and executed an affidavit in which she admitted she was the woman who had driven the Brashear vehicle and then fled the scene on the day of the collision. Stephens also admitted that she had been Bailey's girlfriend at the time of the collision and that Bailey had recently contacted her and told her not to talk to anybody about the accident. On March 24, 1999, the trial court vacated and nullified the default judgment entered in favor of Sentry and against Huff.

Irvin and Hodge filed their Plaintiffs' Second Motion for Leave to Amend Complaint on April 3, 1999, this time requesting that Stephens be added as a defendant. Likewise, Sentry filed its Motion to Amend Complaint in order to add Stephens as a defendant in its cause. The trial court denied both motions, finding that Plaintiffs had failed to exercise due diligence by relying on Bailey's testimony, which identified Huff as the driver, and in failing to investigate the involvement of Stephens, whose name appeared on the LAW Incident Table. The trial court also granted Huff's Trial Rule 12(C) Motion to Dismiss, thereby dismissing Huff from Irvin and Hodge's negligence action as well.

On May 28, 1999, Irvin and Hodge filed a motion designated "Motion to Correct Error," essentially reasserting the same case law and arguments contained in their second motion requesting leave to amend their complaint. With their Motion to Correct Error, Irvin and Hodge filed, for the first time, an affidavit from their attorney, J. David Hollingsworth ("Hollingsworth"). In his affidavit, Hollingsworth stated (1) that he had personally contacted the Frankfort Police Department in December of 1994 to obtain any information the department may have had in regard to the collision, (2) that he had been informed that all the information the department had was contained within the Accident Report, and (3) that the Accident Report had been conveyed to him shortly thereafter. Hollingsworth further stated in his affidavit that at no time did anyone from the Frankfort Police Department inform him of the existence of the LAW Incident Table or mention Kimberly Stephens's name.

On June 1, 1999, Sentry likewise filed its Motion to Correct Errors. Therein, Sentry also reasserted case law and arguments raised in its prior Motion to Amend Complaint. Sentry also included, for the first time, an affidavit of its attorney, William Ivers ("Ivers"), who stated that he, too, had contacted the Frankfort Police Department to obtain information regarding the collision, that he had received only the Accident Report listing the driver of the Brashear vehicle as "Unknown," and that prior to filing his Motion to Amend Complaint, he had been unaware of any information identifying Stephens as the driver of the Brashear vehicle.

On June 23, 1999, the trial court granted the Plaintiffs' "Motion[s] to Correct Error," and in both cases, permitted them to add Stephens as a defendant, despite the fact the applicable statute of limitations for the underlying offense had run. In both orders, the trial court stated that it could consider the affidavits of counsel in making its decision, but further stated it had not found the affidavits dispositive.

Stephens and CIC subsequently filed their petitions for certification for interlocutory appeal for both cases, which the trial court granted on September 3, 1999. This Court granted Stephens's and CIC's petition to entertain jurisdiction of this interlocutory appeal on October 19, 1999. The following appeal ensued.

### Discussion and Decision

#### I. Motion to Correct Error/Motion to Reconsider

We first address Stephens's and CIC's allegations that the trial court erred when it considered the attorney affidavits submitted by Plaintiffs with their Motion[s] to Correct Error. To make this determination, we must further scrutinize the pertinent procedural facts.

On April 29, 1999, the trial court granted Huff's Motion to Dismiss, stating as follows:

> Comes now Defendant, Loretta Huff, by counsel, having moved to dismiss this cause of action against her pursuant to Indiana T.R. 12.
>
> And the court, having examined the same and being duly advised in the premises, now finds that the prayer thereof should be granted.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the above-captioned cause of action is dismissed with prejudice as against Loretta Huff.

(Irvin/Hodge R. 108.) On the same day, the trial court also denied Plaintiffs' respective motions requesting leave to amend their complaints and, in so doing, stated, in pertinent part:

> Plaintiffs file their Second Motion to Amend Complaint. Court does not find that "concealment" applies. At first blush, equitable estoppel seems to apply. Stephens affirmatively left the scene. Some months later the passenger (Stephens'[s] boyfriend and car owner's son) testified at deposition that Loretta Huff was driving. Huff is non-existent.
>
> Had Stephens'[s] affidavit of March, 1999 been the first knowledge for Plaintiff, leave should be granted.... However, the Frankfort Police Law Incident Table, created *at the time* of the 1994 accident, identified Kimberly Stephens as "Suspect Driver # 1."
>
> Plaintiffs were obligated to take due diligence at least to investigate the involvement of Kimberly Stephens, but did not do so. Instead, they apparently relied on her boyfriend passenger....
>
> Court cannot find under these circumstances that Plaintiffs exercised due diligence.
>
> IT IS THEREFORE ORDERED that Plaintiffs' Second Motion to Amend Complaint be denied.

(Irvin/Hodge R. 106; Sentry R. 117.)

On May 28, 1999, Plaintiffs filed their respective motions captioned "Motion to Correct Error," alleging that the trial court had erred in both denying their earlier request for leave to name Stephens as a defendant and in finding that they had failed to exercise due diligence. In support of these assertions of error, Plaintiffs essentially repeated the arguments that they had raised previously in their second motions for leave to amend. Plaintiffs also attached, for the first time, the attorney affidavits at issue in this case.

Counsel for Huff and CIC objected to the admission of the attorney affidavits and requested that they be stricken, citing Indiana Trial Rule 59. However, on June 23, 1999, the trial court granted Plaintiffs' Motion[s] to Correct Error thereby granting their requests for leave to amend their complaints and add Stephens as a defendant. In so doing, the trial court stated, in pertinent part:

> The Court having reviewed designated materials such as the standard Officers Report ("driver unknown") and deposition of car owner's son misidentifying driver, finds that It erred. Alleged driver Stephens was apparently Bailey's girlfriend who fled the scene, then later the state.
>
> In the interest of justice, Court can consider counsel's untimely affidavit, but does not find it dispositive in this matter.
>
> IT IS ORDERED that Plaintiffs' Motion to Correct Errors be granted, and that Motion to Amend Complaint be granted.

(Irvin/Hodge R. 134; Sentry 142.)

In support of their contention that the trial court erred when it considered the attorney affidavits submitted by Plaintiffs, Stephens and CIC point out that, pursuant to Indiana Trial Rule 59, Indiana law does not permit a party to offer evidence, by way of affidavit, which was previously known but which the party merely neglected to submit at a prior proceeding. Ste-

phens and CIC further assert that the affidavits in question simply contain facts that were known to the Plaintiffs when they filed their prior motions for leave to amend their complaints to add Stephens as a defendant. Thus, Stephens and CIC conclude that the belated affidavits were erroneously accepted and considered by the trial court.

Plaintiffs recognize that Indiana Trial Rule 59 would preclude the trial court from considering their affidavits if a final judgment had been entered. However, Plaintiffs counter that the trial court's initial order denying their requests for leave to add Stephens as a defendant was not a final judgment, but was an interlocutory order. Thus, Plaintiffs conclude that (1) the trial court had the inherent power to modify its order until such time as it issued a final order, (2) Indiana Trial Rule 59 is inapplicable, and (3) the affidavits were properly considered. We agree.

### Standard of Review

■ A trial court has the inherent power to reconsider, vacate, or modify any previous order so long as the case has not proceeded to final judgment. *Wabash Grain, Inc. v. Bank One, Crawfordsville, NA*, 713 N.E.2d 323, 324 (Ind.Ct.App. 1999). Additionally, a trial court may base its decision to modify an order upon any theory supported in the designated materials. *Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 419 (Ind.Ct. App.1997).

### Analysis

■ Indiana Trial Rule 59(C) provides that a "motion to correct error . . . shall be filed not later than thirty (30) days *after the entry of final judgment. . . .*" (Emphasis added.) This rule has been held to be mandatory and jurisdictional. *See In re Barnett's Estate*, 159 Ind.App. 491, 307 N.E.2d 490, 493 (1974). Thus, a motion to correct error may only be made after a trial court has issued a final judgment. T.R. 59. Moreover, we have previously held that "a trial court entry sustaining a motion (to dismiss) but going no further is not sufficient to constitute a final judgment." *Parrett v. Lebamoff*, 179 Ind. App. 25, 383 N.E.2d 1107, 1108 (1979); *see also Phipps v. First United Sav. Bank*, 601 N.E.2d 13, 15–16 n. 1 (Ind.Ct.App. 1992) (holding that a motion to dismiss does not operate as a final adjudication and the grounds raised therein may still be argued and again considered in the appeal on the merits of the case).

■ Our review of the record indicates that there was no final judgment entered following the trial court's order granting Huff's motion to dismiss. Moreover, there has been no disposition of this case on its merits. We recognize that the practical effect of the trial court's April 29, 1999, rulings dismissing Huff from the cause of action and denying Plaintiffs' request to add Stephens as a defendant was to end the litigation due to the fact there were no longer any viable defendants. However, procedurally speaking, the cause of action had not concluded, in that there was no final judgment. Thus, after reviewing the substance of the motion itself in light of the procedural posture of the case, we find that Plaintiffs' motions, although each was labeled a "Motion to Correct Error," could not have been so. Rather, we find the motions were in the nature of a motion to reconsider. *See St. Margaret Mercy Healthcare Centers, Inc. v. Lake County*, 714 N.E.2d 272, 274 (Ind. Ct.App.1999) (stating that party's pleading, while designated a motion to correct error, could not have been so in light of the fact the court had not made a final judgment and thus pleading was in the nature of a motion for clarification or a motion to reconsider), *trans. denied.* The record also reveals that, in its order, the trial court stated that it could consider the affidavits but that it did not find them to be dispositive. This statement further supports our conclusion that the trial court was treating Plaintiffs' motions as motions to reconsider. *See Boone County Rural Elec. Mem-*

*bership Corp. v. Layton,* 664 N.E.2d 735, 739 (Ind.Ct.App.1996) (holding that appellate courts presume the trial courts know and will follow the law). Consequently, we find that the trial court did not err when it considered the attorney affidavits. Moreover, as stated previously, a trial court is permitted to reconsider and/or modify an order based upon any theory supported by the designated materials. The record reveals that, in vacating its previous order and allowing Plaintiffs to add Stephens as a defendant, the trial court based its decision on the Accident Report and Bailey's deposition. We find that this evidence supports the trial court's decision. However, our inquiry does not end here in light of Sentry's and CIC's additional contention that the applicable statute of limitations pertaining to Plaintiffs' claims had expired.

## II. Indiana's Fraudulent Concealment Statute

Stephens and CIC next contend that the trial court abused its discretion in granting Plaintiffs' motions captioned "Motion[s] to Correct Error," thereby allowing Plaintiffs to add Stephens as a defendant after the two-year statute of limitations for tort actions had expired. In support of this contention, Stephens and CIC assert that Indiana's fraudulent concealment statute is inapplicable to the present case because the existence of the underlying cause of action was not concealed, but indeed was known to the Plaintiffs at its inception. Stephens and CIC also point out that Stephens's identity as the suspected driver of the Brashear car was available two years before the statute of limitations expired and thus argue that Plaintiffs failed to use due diligence in investigating Stephens's potential involvement and therefore should be precluded from seeking equitable relief. Finally, Stephens and CIC assert that the doctrine of fraudulent concealment affords no relief to Plaintiffs because Stephens made no representations or misrepresentations to any party and engaged in no affirmative act to conceal the Plaintiffs' cause of action.

*Standard of Review*

■ "Consistent with an underlying purpose to facilitate decisions on the merits and to avoid pleading traps, the Indiana Trial Rules generally implement a policy of liberal amendment of pleadings, absent prejudice to an opponent." *Kimberlin v. DeLong,* 637 N.E.2d 121, 128 (Ind.1994). Thus, a trial court is given broad discretion in this area and, absent an abuse of discretion, will be affirmed if there is any rational basis for its decision. *Id.*

*Analysis*

■ Indiana's Fraudulent Concealment Statute reads as follows:

> If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action.

IND.CODE § 34–11–5–1. There is a split of opinion on this Court, however, as to whether the "concealment" discussed in this statute refers solely to the case where a wrongdoer conceals the cause of action itself, or whether the statute may be applied when concealment or misrepresentation of the *party* against whom a cause of action has arisen occurs.

Stephens and CIC rely on *Landers v. Evers,* 107 Ind.App. 347, 24 N.E.2d 796 (1940), in support of their contention that the concealment recognized by our Statute of Fraudulent Concealment pertains solely to the concealment of the cause of action and not to the identity of the party against whom the cause of action may be brought. In *Landers,* plaintiff Landers brought an action to recover damages for personal injuries alleged to have been received by her as a result of an automobile collision with Evers. However, Landers filed her complaint after the two-year statute of limitations had run. In an attempt to avoid the statute of limitations, Landers alleged that on the night of the accident, her hus-

band, with whom she had been riding, asked Evers his name and address and that in response thereto, Evers replied "Harold" Evers, instead of giving his true name, "Howard" Evers. Landers further asserted that she did not learn of this misrepresentation until after the two-year statute of limitations had run. Thus, Landers claimed that because Evers had misrepresented his true name, Evers had concealed his identity and should therefore be estopped from claiming the benefits of the statute of limitations, either by operation of our statute or by the doctrine of equitable estoppel.

In rejecting Landers's contention, the *Landers* court opined that "[t]here is a distinction between concealment or misrepresentation of the identity of the party against whom a cause of action has arisen and a concealment of the cause of action." *Id.* at 797. The court went on to state that Landers had full knowledge of her cause of action and that the concealment or misrepresentation complained of referred exclusively to the identity of the party against whom the cause of action may have been brought. The court then concluded that Evers's concealment of his true name was "not a reason or ground recognized by the statute for the tolling of the running of the statute of limitations. The concealment recognized by our statute relates to the cause of action and not the identity of the party against whom the action may be brought." *Id.*

Plaintiffs, on the other hand, direct our attention to two more recent cases where we have taken a position contrary to the holding in *Landers.* In *Sutton v. Sanders,* 556 N.E.2d 1362 (Ind.Ct.App.1990), Sanders was injured in an automobile accident while he was a passenger in Sutton's car that was being operated by a third party, Purlee. Sutton was one of five occupants in the car. All of the car's occupants had been drinking prior to the accident. After a head-on collision, the five occupants of the car agreed to state that Sutton was driving the car rather than Purlee, the

actual driver. Sanders and his mother thereafter filed a timely complaint against Sutton, alleging that Sutton was the driver of the car in which Sanders was riding at the time of the collision. After the statute of limitations had run, Sutton was deposed, at which time Sanders learned that Purlee, not Sutton, had been driving the car. The trial court allowed Sanders to amend his complaint to show Purlee was the driver of the car. On appeal, Purlee and Sutton argued that the amended complaint had not been filed within the statute of limitations and therefore the trial court had erred in denying their motion for summary judgment.

The *Sutton* court disagreed, holding that Indiana's concealment statute "will extend a party's time to file suit only when the opposing party actively and intentionally conceals the cause of action." *Id.* at 1366. It further found that Purlee "actively concealed the cause of action when he participated in the statement to the police officer that Sutton was driving the vehicle." *Id.* at 1368. The court went on to note that Purlee did not inform the police officer investigating the accident or Sanders's mother that he had been driving, and thus, the statute of limitations did not begin to run until he admitted the fact during a March 1989 deposition. Accordingly, the *Sutton* court concluded that Sanders' action was timely filed.

The second case Plaintiffs rely on is *Ayers v. State Farm Mut. Auto. Ins. Co.,* 558 N.E.2d 831 (Ind.Ct.App.1990). In *Ayers,* plaintiff Ayers's vehicle was struck by another vehicle, which fled the scene and was not later identified. At the time of the accident, Ayers was insured by State Farm. Thus, after the accident, Ayers began to negotiate a settlement with State Farm for her injuries pursuant to her insurance contract's uninsured motorist provision. However, State Farm denied coverage, and Ayers thereafter filed suit.

State Farm filed a motion to dismiss, alleging Ayers's action was not timely filed. Specifically, State Farm argued that

because Ayers did not bring her action against the unknown driver of the vehicle that caused the accident within the limitation period for personal injury actions, she was no longer legally entitled to recover damages from the driver, and therefore State Farm was no longer liable under the insurance contract. The trial court agreed and dismissed the case. On appeal, Ayers argued that her action was not barred by the statute of limitations. This Court agreed, stating that the doctrine of fraudulent concealment "rescues" Ayers from the impasse posed by State Farm. *Id.* at 833. The *Ayers* court went on to state that the doctrine "operates as an equitable device to estop a defendant from asserting a statute of limitations when he has, either by deception or by violation of duty, concealed from the plaintiff material facts preventing the plaintiff from pursuing a potential cause of action." *Id.* The *Ayers* court also noted that a driver of a vehicle involved in an accident has a statutory duty to stop and be identified pursuant to Indiana Code sections 9–4–1–40 and –41 [7] and, by leaving the accident scene, the unknown driver in *Ayers* fraudulently concealed his or her identity in violation of this statutory duty, thereby preventing Ayers from pursuing her cause of action. Thus, the *Ayers* court concluded that Ayers's potential claim against the unknown driver was not barred by the statute of limitations and that Ayers should have been permitted to attempt to collect damages from State Farm under its insurance contract.

■■■■■ We agree with the reasoning in *Sutton* and *Ayers* and, after careful consideration, decline to follow *Landers.* In the instant case, Stephens had an affirmative statutory duty to remain at the scene of the accident and to identify herself to the authorities. *See* IND.CODE §§ 9–26–1–1 and –2. Stephens failed to fulfill her statutory duty. Moreover, Stephens's duty to report her involvement was a con-

tinuing obligation, which she chose to ignore at the expense of Plaintiffs well beyond the statute of limitations, which she now seeks to use as a shield against prosecution. The failure to speak when there is a duty to disclose will toll the running of the statute of limitations. *Lambert v. Stark,* 484 N.E.2d 630, 632 (Ind.Ct.App. 1985). By fleeing the scene and concealing her identity for more than two years, Stephens purposefully and affirmatively concealed material facts that prevented Plaintiffs from pursuing their respective causes of action. We cannot condone Stephens's conduct and hold that such behavior is prohibited by Indiana's Fraudulent Concealment Statute.

The subterfuge by Stephens and Bailey did not end with Stephens fleeing the scene. Bailey also had a duty to truthfully and accurately report the events surrounding the collision, including providing authorities with Stephens's name. *See* IND. CODE § 9–26–1–6. Our review of the record reveals that Bailey purposefully misled investigating officers at the scene by telling Officer Martin that he did not know who the driver of the Brashear vehicle was and that he had only met the woman that evening. In so doing, Bailey committed the offense of False Informing. *See* IND. CODE § 35–44–2–2(c)(1). Bailey later committed Perjury by lying under oath and telling Plaintiffs' attorneys, during his deposition, that the name of the woman who left the scene was Loretta Huff when he knew that the driver was Stephens, his girlfriend. *See* IND.CODE § 35–44–2–1. Thus, there were at least three separate affirmative acts taken by Stephens and Bailey to illegally conceal Stephens's identity in order to evade prosecution. Despite these acts, CIC and Stephens have used the court to try to avail themselves of a procedural technicality, asserting that Plaintiffs should be denied their day in court for failing to use due diligence in

---

**7.** We note that IND.CODE §§ 9–4–1–40 and –41 have since been recodified at IND.CODE §§ 9– 26–1–1 and –2 respectively.

identifying and locating Stephens. We have no place for such abhorrent conduct in our judicial system. Moreover, this Court will not reward Stephens for her deceptive and unlawful conduct or allow CIC to rely upon this conduct as a basis to support its motion to dismiss.

In today's society, where court dockets are congested and costs associated with litigation are often exorbitant, it is increasingly important that any information garnered at the scene of an accident be provided in a truthful and forthright manner in accordance with the law, in order to promote efficient and economical judicial proceedings. Attorneys cannot be expected to pursue every possible avenue and must able to trust that any information provided by witnesses has been done so in a truthful manner. In the case at bar, the attorneys for Plaintiffs obtained a copy of the police report in which the driver of the Brashear car was listed as "Unknown." They then deposed Bailey, who was the only witness who could have provided the name of the unknown driver and who was under a duty to fully disclose any relevant information. Based on Bailey's false information, Plaintiffs' attorneys made diligent but unsuccessful attempts to locate the non-existent Loretta Huff, wasting valuable time and money.

Based on the forgoing, we find Stephens's and CIC's argument that Plaintiffs were not diligent to be disingenuous. We further conclude that the evidence supports the trial court's ultimate determination that it had previously erred in finding Plaintiffs had failed to exercise due diligence in locating Stephens. The policy in our state is to freely allow amendments in order to bring all matters at issue before the trial court. *Cox v. Indiana Subcontractors Ass'n, Inc.*, 441 N.E.2d 222, 225 (Ind.Ct.App.1982). Accordingly, we hold the trial court properly allowed Plaintiffs leave to amend their complaints and add Stephens as a defendant, despite the running of the statute of limitations.

Affirmed.

MATTINGLY, J., and BROOK, J., concur.